# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2026

Lyle W. Cayce
Clerk

_____

No. 25-40520

_____

IN THE MATTER OF DONALD R. TRIPLETT, JR.

*Debtor*,

KEITH BLACK; JEREMY HALTOM,

*Appellants*,

*versus*

DONALD R. TRIPLETT, JR.,

*Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:24-CV-838

_____

Before JONES, CLEMENT, and RICHMAN, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:[*]

After debtor Donald Triplett petitioned for Chapter 7 bankruptcy in September 2019, creditors Keith Black and Jeremy Haltom brought adversary proceedings to avoid discharge under 11 U.S.C. § 727. After many

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-40520

pretrial motions, sanctions motions, and a joint bench trial, the bankruptcy court concluded that (1) Black and Haltom failed to carry their burden of proving that Triplett should be denied discharge, and (2) the parties' respective sanctions motions were moot. The district court affirmed the conclusions on discharge but reversed and remanded the creditors' sanctions motions. We AFFIRM.

## BACKGROUND

For many years, Triplett has worked in the construction industry and has owned DFW Design & Remodeling, LLC ("DFW"), a residential and commercial construction business in North Texas. Triplett allegedly partnered with Ronald and Shawn Valk by merging his construction company with their business.

That business relationship soured, however, when Triplett reported that the Valks committed malfeasance and tax evasion. Because of some business disputes, Triplett asked David Stephan, one of his attorneys, to remove Shawn Valk as the executor of his will. Triplett also hired Stephan to help collect money that the Valks or their company allegedly owed him. Meanwhile, Black and Haltom alleged that Triplett committed fraud and breach of contract. Together, the Valks, Black, and Haltom brought a litany of lawsuits against Triplett.

With thousands of dollars in judgments now looming, Triplett hired Joyce Lindauer as his bankruptcy attorney. Triplett completed a questionnaire to help Lindauer prepare the necessary bankruptcy papers. In that questionnaire, Triplett stated that he and his husband were self-employed and that he had an ownership interest as sole proprietor of DFW, Preferred Platinum Construction ("Preferred Platinum"), Copper Creek Distributors ("CCD"), and Copper Creek Fine Cabinetry. His

2

questionnaire also stated that he derived his income from Preferred Platinum and CCD.

On September 19, 2019, Triplett voluntarily petitioned for Chapter 7 bankruptcy.  Voluntary Petition, *In re Triplett*, No. 19-42570 (Bankr. E.D. Tex. Sept. 19, 2019), Dkt. No. 1.  But he did not file the required documents, including his Statement of Financial Affairs, Schedules A through J, and several Chapter 7 statements, until he received a warning from the court.  Triplett filed his Original Schedules, Chapter 7 Statement of Current Monthly Income, and Statement of Financial Affairs on October 15.

Around a month later, the trustee held the meeting of creditors under 11 U.S.C. § 341.  After this meeting, the Valks moved for an examination under Federal Rule of Bankruptcy Procedure 2004, seeking to depose Triplett and require production of certain documents.  Black and Haltom later joined this motion.  The Valks moved for extension of the deadline to file complaints under 11 U.S.C. §§ 523 and 727, and Black and Haltom joined that motion, too.  The bankruptcy court granted the motion for examination and the motion for extension, requiring Triplett to (1) submit to a ten-hour examination that could be split in two days; (2) "take any reasonable actions necessary" to obtain certain documents and to "produce" any such documents that were "in his possession or control" and that the bankruptcy court identified on a separate list; and (3) cooperate with all discovery requests.

Later, the Valks, Black, and Haltom moved for another extension based on Triplett's alleged failure to provide documents or otherwise cooperate in discovery.  The bankruptcy court held a hearing and granted the motion, extending the deadline to file a complaint and ordering that Triplett produce certain documents and sit for a deposition that "shall continue from day to day, until completed by Creditors."

No. 25-40520

Black and Haltom filed the adversary proceedings against Triplett. As pertinent here, in their amended complaints, Black and Haltom both alleged grounds to deny discharge because Triplett concealed or failed to keep various financial information in violation of 11 U.S.C. § 727(a)(3); knowingly and fraudulently made false oaths in violation of 11 U.S.C. § 727(a)(4); and refused to obey lawful court orders in violation of 11 U.S.C. § 727(a)(6)(A).

A few days later, Triplett appeared for his Rule 2004 examination and deposition. Triplett stated that he was only going to testify "[f]or five hours today and tomorrow" because "[t]hat's the judge's order." At the time, though, Triplett "didn't know" that "there had been another hearing" and another "order that said [the deposition] was going to be unlimited." Still, the Valks, Black, and Haltom moved to compel Triplett to sit for another deposition and provide more documents, arguing that Triplett wrongly limited the amount of deposition time to ten hours and failed to respond fully to the questions. The bankruptcy court then granted that motion and authorized another six hours of deposition time. After learning of the subsequent orders, Triplett appeared as required, and counsel was able to finish his examination of Triplett.

Unsatisfied with the second deposition, however, the Valks, Black, and Haltom again moved to compel and requested sanctions. The bankruptcy court granted in part and denied in part this second motion by sanctioning Triplett in the amount of $500.

Triplett then moved for sanctions dismissing their cases. He argued that the Valks retaliated against him for blowing the whistle on their purported tax-fraud scheme by recruiting Black and Haltom as their "lackeys" to bring a multitude of lawsuits, abusing the judicial system, possessing many of Triplett's financial records, and destroying the financial records to prevent Triplett from satisfying bankruptcy-disclosure

4

requirements. Black and Haltom responded by moving to strike Triplett's "death-penalty" motion and sought further sanctions.

Eventually, after denying summary judgment motions, the bankruptcy court held a four-day joint trial on the adversary proceedings against Triplett. Triplett was absent on the first day of the trial, however, because Haltom and Black failed to subpoena him—a failure the bankruptcy court found "astonishing" since the "trial was set approximately six months in advance" and the parties had made numerous filings preceding trial. Without the benefit of Triplett's testimony, counsel for Black and Haltom decided to build a case-in-chief by admitting certain exhibits. But on later days in trial, the plaintiffs' counsel cross-examined Triplett and two of his previous attorneys.

The bankruptcy court issued omnibus findings of fact and conclusions of law. It specifically determined that it would not deny discharge to Triplett because Black and Haltom failed to carry their burden of proving that Triplett (1) failed to keep and preserve adequate records, (2) knowingly made a false statement under oath, and (3) willfully refused to obey a court order. The bankruptcy court then dismissed the parties' respective sanctions motions as moot.

Black and Haltom appealed to the district court. The district court affirmed the bankruptcy court's conclusions on discharge but reversed and remanded the plaintiffs' motions for sanctions. *See generally Black v. Triplett ("District Court Opinion")*, 671 B.R. 805 (E.D. Tex. 2025). Black and Haltom appealed.[1]

---

[1] Black and Haltom's opening brief does not challenge the district court's judgment remanding the sanctions motion. Accordingly, any argument on that issue is forfeited. *See*

No. 25-40520

## STANDARD OF REVIEW

On appeal in a bankruptcy case, this court must use "the same standard of review as did the district court." *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (en banc). This court thus reviews the bankruptcy court's factual findings for clear error and its legal conclusions and mixed questions of fact and law *de novo*. *Id.* "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *In re Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992)).

## DISCUSSION

Three issues must be decided: (1) whether the district court's judgment was a final, appealable order over which this court has jurisdiction; (2) whether Triplett's absence on the first day of trial violated Federal Rule of Bankruptcy Procedure 4002; and (3) whether the district court correctly determined that discharge should not be denied under Section 727(a). We conclude that this court has jurisdiction and that the district court was correct on all points.

## I. JURISDICTION

This court raised the issue of appellate jurisdiction sua sponte, as we are entitled to do. *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999). On receiving the parties' briefing and after consideration, we conclude that jurisdiction exists.

In bankruptcy cases, this court has jurisdiction over "all final decisions, judgments, orders, and decrees." 28 U.S.C. § 158(d)(1). "A final

---

Fed. R. App. P. 28(a)(8); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

order 'must generally be one which ends the litigation . . . and leaves nothing for the court to do but execute the judgment.'" *In re Cnty. Mgmt., Inc.*, 788 F.2d 311, 313 (5th Cir. 1986) (some internal quotations omitted) (quoting *In re Kutner*, 656 F.2d 1107, 1110 (5th Cir. Unit A Sept. 1981); *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945).

In this case, the district court affirmed the bankruptcy court's judgment as to discharge, but it reversed and remanded the denial of Haltom and Black's sanctions motions.[2] *District Court Opinion*, 671 B.R. at 825. At first glance, this disposition does not appear final, as it "reverses an order of the bankruptcy court and remands the case to the bankruptcy court for significant further proceedings." *In re Caddo Par.-Villas S., Ltd.*, 174 F.3d 624, 626 (5th Cir. 1999).

But it is relevant here that "courts properly view finality more flexibly under § 158(d) . . . than under § 1291." *In re Delta Servs. Indus., Etc.*, 782 F.2d 1267, 1269 (5th Cir. 1986). And *In re Pratt*, 524 F.3d 580 (5th Cir. 2008) is nearly on point. There, the bankruptcy court denied the creditor's motion for sanctions and awarded attorney's fees to the debtor's counsel, and the district court affirmed the denial of the sanctions motion but reversed and remanded the attorney's fees ruling. *Id.* at 583–84. This court determined that it did not have jurisdiction over the attorney's fees ruling, which required the bankruptcy court to conduct significant further proceedings, but it *did* have jurisdiction over the sanctions ruling because attorney's fees were

_____

[2] Triplett "did not appeal the denial of his motion for sanctions" to the district court. *District Court Opinion*, 671 B.R. at 825. And this court "do[es] not consider arguments or claims not presented to the bankruptcy court." *In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990) (citing *In re Moody*, 849 F.2d 902, 905 (5th Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S. Ct. 493 (1988)).

"only [a] collateral issue" and did "not affect the district court's order affirming the denial of sanctions." *Id.* at 584–85.

Here, Black and Haltom's sanctions motions raise a collateral issue, and the bankruptcy court's decision on remand cannot affect the district court's order affirming the discharge ruling. Indeed, the district court stated that "[t]he merits and the sanctions issue involve separate inquiries." *District Court Opinion*, 671 B.R. at 824–25 (citing *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010)). Thus, even if the remand portion of the district court's order was not "final," the discharge portion still "may be appealed separately . . . as long as the district court has made a final judgment as to the discrete legal issue being appealed." *In re Yazoo Pipeline Co., L.P.*, 746 F.3d 211, 214 (5th Cir. 2014). Accordingly, this Court has jurisdiction under § 158(d)(1) to review that ruling.[3]

## II. Federal Rule of Bankruptcy Procedure 4002

Under Bankruptcy Rule 4002, a debtor "*must* . . . attend the hearing on a complaint objecting to discharge and, if called, testify as a witness." Fed. R. Bankr. P. 4002(a)(2) (emphasis added). The parties dispute whether Triplett violated this rule in the first place and if so, whether any such violation was harmless error. These are not hard issues.

First, Triplett *plainly* violated Rule 4002 by failing to appear for the first day of trial. Although Triplett contends that "a purely literal reading" means that his eventual appearance at trial was enough, his absence still

---

[3] This conclusion is also consistent with other circuits. *See, e.g.*, *In re Porto*, 645 F.3d 1294, 1301 (11th Cir. 2011) ("[A] sanctions award issued in addition to and separate from the merits judgment in the case . . . falls on the *Budinich* side of the bright line of finality."); *see also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199–203, 108 S. Ct. 1717, 1720–22 (1988) (holding that attorneys' fee recovery is separate from final and appealable merits determination).

prevented him from "testify[ing] as a witness" when Black and Haltom would have initially called him to the stand. That failure violates Rule 4002's plain language. Although the bankruptcy court blamed Black and Haltom for failing to subpoena Triplett and found this failure "astonishing," nowhere does the language of the rule require a party to subpoena the debtor or a court to compel the debtor's attendance by court order. This rule's silence on this point becomes more telling because the immediately preceding provision states that a debtor must attend "an examination *when the court orders*." FED. R. BANKR. P. 4002(a)(1) (emphasis added). Based on the text and context of Rule 4002, Triplett had to attend the trial, regardless of whether a subpoena was issued. *In re De Ronde*, 509 B.R. 223, 228 (Bankr. S.D. Iowa 2012) ("[I]f a party in an adversary proceeding brought pursuant to section 727 calls the debtor as a witness, the debtor *must* appear, regardless of a subpoena.").

But it is equally plain that, despite Triplett's violation, any resulting error was harmless. Bankruptcy Rule 9005 incorporates Federal Rule of Civil Procedure 61, which states that "the court *must* disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61 (emphasis added). Triplett's violation of Rule 4002 was harmless error because it did not affect substantial rights. After a thirty-minute recess at trial, counsel for Black and Haltom stated that he believed that he "ha[d] enough information from prior testimony to go forward." The bankruptcy court then allowed Black and Haltom to call Triplett in their rebuttal case. And their counsel confirmed before the district court that he was able to ask Triplett every question on cross-examination that he would have otherwise asked Triplett on examination during the plaintiffs' case-in-chief. These facts show no harm.

Black and Haltom counter that the error was harmful because "a debtor's violation of Bankruptcy Rule 4002, alone, is sufficient to deny

discharge." But this court has stated that "[t]he right to a discharge in bankruptcy is addressed to the sound discretion of the bankruptcy court, and appellate courts should interfere only for the most cogent, compelling reasons in situations of gross abuse."[4] *In re Jones*, 490 F.2d 452, 455 (5th Cir. 1974). Black and Haltom cite no caselaw holding that failure to show up for the first day of trial categorically requires a bankruptcy court to deny discharge or qualifies as "gross abuse" or a "cogent, compelling reason[]" to deny discharge. Nor have they shown that the failure to deny discharge in such circumstances was an abuse of the bankruptcy court's discretion.

As noted, the cases on which Black and Haltom rely say nothing about how failing to appear is alone sufficient for the denial of discharge. *See In re Faber*, 330 B.R. 235, 239–40 (Bankr. N.D. Ind. 2005); *In re Robson*, 154 B.R. 536, 539 (Bankr. E.D. Ark. 1993); *In re Hunn*, 51 B.R. 981, 982–83 (Bankr. M.D. Fla. 1985); *In re Buzzelli*, 246 B.R. 75, 99 n.3 (Bankr. W.D. Pa. 2000). Two courts state that a debtor's failure to attend the trial "*is in itself sufficient* to deny the debtor's discharge," *In re Ishahak*, 130 B.R. 16, 20 (Bankr. E.D.N.Y. 1991) (emphasis added) (citing *In re Howard*, 55 B.R. 580, 583 (Bankr. E.D.N.C. 1985)), but they turned on a debtor's refusal to obey lawful orders, *not* a debtor's failure to appear at trial, *see* 6 COLLIER ON BANKRUPTCY ¶ 727.09 (16th ed. 2026) (addressing a debtor's refusal to

---

[4] Other courts seem to agree that a debtor's failure to appear only gives the bankruptcy court *discretion* to deny discharge, not an *obligation* to do so. *See In re De Ronde*, 509 B.R. at 228 ("[Debtor] did not appear at trial and discharge *may* be denied on this basis *if* the Plaintiff presents a prima facie case." (emphasis added) (citing cases)); *In re Sadler*, 282 B.R. 254, 262 (Bankr. M.D. Fla. 2002) ("Although Federal Rule of Bankruptcy Procedure 4002(2) requires a debtor to attend the hearing on a complaint objecting to discharge and to testify if called as a witness, a debtor's failure to do so *does not mandate* the denial of h[is] discharge." (emphasis added)); *In re Poland*, 222 B.R. 374, 377 (Bankr. M.D. Fla. 1998) ("[T]he current Code and Rules do *not* contain a *mandatory* denial of discharge if the debtor fails to appear at a trial objecting to the discharge." (emphasis added)).

No. 25-40520

obey a lawful order under Section 727(a)(6)); *In re Simon*, 297 F. 942, 945–46 (2d Cir. 1924) (concluding that a debtor's refusal to appear "after having been subpoenaed" constituted a refusal to obey a lawful order and justified a denial of discharge); *In re Kauffman*, 675 F.2d 127, 128 (7th Cir. 1981) (per curiam) (determining that the bankruptcy court did not abuse its discretion in denying discharge because the debtor failure to comply with a court order, not because the debtor failed to appear).

In sum, Triplett's violation of Rule 4002 for one day was not prejudicial, did not cause harmful error, and furnished no independent ground to deny his discharge.

## III. 11 U.S.C. § 727(a)

Black and Haltom disagree with the district court's analysis of discharge under 11 U.S.C. § 727(a). Under that statute, a "court shall grant the debtor a discharge, unless" a statutory exception applies. 11 U.S.C. § 727(a). Three of those exceptions are at issue here: (1) the failure to keep or preserve information under Section 727(a)(3); (2) the knowing and fraudulent making of a false oath under Section 727(a)(4)(A); and (3) the refusal to obey lawful court orders under Section 727(a)(6)(A).

### A. Section 727(a)(3)

Section 727(a)(3) prevents a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." *Id.* § 727(a)(3). Broadly, "[a] debtor's financial records need not contain 'full detail,' but 'there should be written evidence' of the debtor's financial condition." *In re Dennis*, 330 F.3d at 703 (quoting *In re Goff*, 495 F.2d 199, 201 (5th Cir. 1974)). More specifically, a plaintiff bears the initial burden to prove two elements: (1) the debtor "failed to keep and

11

preserve h[is] financial records," and (2) "this failure prevented [the plaintiff] from ascertaining h[is] financial condition." *Id.* "The bankruptcy court has 'wide discretion" in both inquiries, and its determination is a finding of fact reviewed for clear error." *Id.* (citations omitted). Clear error is absent as to either of the two elements.

First, Black and Haltom fail to show that the bankruptcy court clearly erred when it found that Triplett failed to keep and preserve financial records. What they mean is that Triplett failed to *create* tax returns for the years after 2017. To be sure, Triplett did not initially file his tax returns for the 2017 to 2023 tax years, but he ultimately produced a copy of his 2017 tax return after he realized that it had not yet been filed and only failed to produce the remaining returns when they were unavailable and when his counsel advised against it.

The unavailability of the remaining returns also does not mean that Triplett has "an affirmative obligation . . . to create adequate records." The statute's plain text says nothing about creating records. It only applies when the "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information." 11 U.S.C. § 727(a)(3). Nonetheless, according to Black and Halton, cases from the Seventh and Ninth Circuits have held that a debtor must *create* books or records. *See In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999); *In re Caneva*, 550 F.3d 755, 762 (9th Cir. 2008). Both are unpersuasive. Their interpretation seems dubious not only definitionally, but because the section refers to *recorded* information, which can only mean information that existed at the date of bankruptcy.

But we need not wade into a circuit split, because the bankruptcy court did not clearly err in finding that the plaintiffs could ascertain Triplett's financial condition. Triplett's bankruptcy attorney produced boxes of documents and other financial information. The record included "volumes"

of bank records for Preferred Platinum, CCD, and DFW for "much of the relevant time period and beyond." *District Court Opinion*, 671 B.R. at 817–18 (citing the record). Those "[b]ank statements are part of 'the core of what is necessary to ascertain the debtor's financial condition.'" *Id.* at 817 (quoting *In re Hobbs*, 333 B.R. 751, 757 (Bankr. N.D. Tex. 2005); *Cadle Co. v. Terrell*, No. 4:01-CV-0399-E, 2002 WL 22075, at *5 (N.D. Tex. Jan. 7, 2002) ("While bank statements and credit card receipts or monthly statements may be simple records, they form the core of what creditors would need to ascertain [the debtor's] financial condition . . . ." (internal quotations omitted)), *aff'd sub nom.*, *In re Terrell*, No. 02-10169, 2002 WL 1973217 (5th Cir. 2002) (per curiam) (unpublished).

Although Black and Haltom argue that Triplett did not disentangle his business funds from personal funds, they do not explain "why [this failure] prevented [Black and Haltom] from understanding [Triplett's] financial condition." *In re Dennis*, 330 F.3d at 703. True, Triplett testified at his deposition that he sometimes paid personal expenses with funds from a business account. But his deposition testimony also states that "[b]usiness stuff for DFW Design would have [gone] into a DFW Design account"; "[b]usiness stuff for [him] personally and Preferred Platinum Construction was all the same pocket"; and he could not answer on the business stuff for Copper Creek because it was "not [his] thing to answer."

Particularly, as to Preferred Platinum, Triplett explained that he and Preferred Platinum had the same account because Preferred Platinum was Triplett's d/b/a, meaning "[t]here [was] no difference other than a name." As to Copper Creek, Triplett previously testified that it was "not [his] company," so he does not "have any knowledge of what Copper Creek has or does not have in the way of accounts." And as to DFW, Triplett testified that it was no longer in existence in around 2016 or 2017, which matters because "[t]he inability to produce or locate the financial records of h[is]

company, in itself, will not deprive [the debtor] the opportunity for a fresh start, particularly when the company has been dissolved for almost three years before the bankruptcy petition was filed." *In re Hobbs*, 333 B.R. at 757 (citing *In re More*, 138 B.R. 102, 105–06 (Bankr. M.D. Fla. 1992)).

This evidence supports that Triplett's alleged failure to provide documents did not prevent Black and Haltom from understanding Triplett's financial condition. *See In re Dennis*, 330 F.3d at 703. It demonstrates that the bankruptcy court did not clearly err in its findings.

Even if Black and Haltom were to satisfy this provision, a court must still grant discharge if "such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Triplett's failure was likely justified here because "the bankruptcy court probably would have found debtor justified in failing to preserve the invoices, time records, spreadsheets, and other records." *District Court Opinion*, 671 B.R. at 817 n.4.

At trial, Triplett testified that the Valks "stole and destroyed" the relevant information and that a senior accountant "wiped" Triplett's computer of all accounting records, invoices, and spreadsheets. The bankruptcy court found that Triplett "produced what bank statements he had or could obtain" and that an employee of the Valks deleted "invoices, time records, spreadsheets, and most records for [Triplett's] sole proprietorships," including DFW and Preferred Platinum. Triplett also testified at his deposition that, "if [the Valks] hadn't destroyed all [his] documents, [he] could have easily tracked it." As a result, the bankruptcy court concluded that Triplett "made significant efforts to obtain, produce, and disclose records from which his financial condition and business transactions might be obtained" and "sincerely attempted to meet the disclosure requirements."

No. 25-40520

Based on this evidence, we are not "left with the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d at 701. Black and Haltom have not shown that Triplett failed to keep and preserve sufficient financial records; any such failure prevented them from ascertaining Triplett's financial condition; or any such failure on Triplett's part was unjustified.

### B. Section 727(a)(4)(A)

The second exception states that a court may not grant discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To satisfy this exception, Black and Haltom must prove five elements: (1) Triplett "made a statement under oath"; (2) "the statement was false"; (3) Triplett "knew the statement was false"; (4) Triplett "made the statement with fraudulent intent"; and (5) "the statement related materially to the bankruptcy case." *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). Statements made in the petition, schedules, meeting of creditors, and Rule 2004 examination are all made under oath. *See* FED. R. BANKR. P. 1008; *In re Self*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005); 3 NORTON BANKR. L. & PRAC. § 86:11 (3d ed. 2025) (noting that this provision "extends to statements made in the petition and schedules as well as testimony at the meeting of creditors and Rule 2004 examinations, all of which are made under oath"). Relevant here, "[a]n omission of an asset can constitute a false oath." *In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005) (citing *In re Beaubouef*, 966 F.2d at 178).

Black and Haltom argue that Triplett made six false statements and that this pattern of misstatements shows fraudulent intent. None of those statements establishes a violation of Section 727(a)(4)(A).

First, Black and Haltom argue that Triplett failed to disclose an ownership interest in Preferred Platinum. And while Triplett did not include the ownership percentage for his interest in Preferred Platinum in his Schedule A/B, Preferred Platinum was a d/b/a, and "one does not own a percentage of oneself" as Triplett points out. Triplett also "reviewed, discussed, and approved the drafts [of the bankruptcy schedules] at [a] meeting" with his attorney and "believed the schedules were accurate when filed." Thus, as the district court put it, Triplett "could have been reasonably unsure how to answer the ownership-interest question when his d/b/a was the object of the ownership," and "the bankruptcy court could have reasonably found that his omission of an ownership percentage . . . was not made with fraudulent intent, knowledge of falsity, or reckless disregard for the truth." *District Court Opinion*, 671 B.R. at 820.

Second, even though Black and Haltom contend that he failed to disclose his interest in Copper Creek, Triplett was not an owner of CCD; only his husband was. And while he received income from CCD by working with his husband there, the fact that he received income from CCD does not mean that he had an ownership interest, especially when he testified that CCD was "not [his] company" and that he does not "have any knowledge of what Copper Creek has or does not have in the way of accounts."

Third, they argue that he falsely stated that he was not an employee of Copper Creek. But both the questionnaire and Triplett's testimony state that he received income from Copper Creek as a subcontractor or independent contractor, not an employee.

Fourth, they contend that he made false statements about his and his husband's monthly salaries in the bankruptcy filings when his Statement of Financial Affairs listed his total gross income as $180,000, but his bank accounts amounted to $304,000. As Triplett argues, however, "bank

16

deposits do not translate directly to 'gross income,'" and "[a] wide variety of bank deposits would not constitute income, including receipts such as expense reimbursements, tax refunds, repayment of loans, and insurance claims." And even if this difference in numbers were a mistake, it would only show that Triplett "could have been understandably confused as to exactly what type of income he was required to report." *District Court Opinion*, 671 B.R. at 820. At most, therefore, Triplett made an honest mistake, and "a discharge cannot be denied when items are omitted from the schedules by honest mistake." *In re Beaubouef*, 966 F.2d at 178.

Fifth, they argue that Triplett admittedly made a false oath by omitting bank accounts from his statement of financial affairs. But Triplett testified that he believed the Statement of Financial Affairs was asking for his financial assets, not "every bank account [he has] ever had," and his attorney provided the relevant bank accounts regardless. That belief is reasonable and far short of proving fraudulent intent.

Sixth, Black and Haltom argue that Triplett's cursory review and pattern of behavior prove the requisite intent. But though Triplett testified that he did a "cursory review" and did not know whether he "read every page of every document," the bankruptcy court determined that Triplett "reviewed, discussed, and approved the drafts [of the bankruptcy schedules] at [a] meeting" with his attorney and "believed the schedules were accurate when filed." It also concluded that Triplett "made significant efforts to obtain, produce, and disclose records from which his financial condition and business transactions might be obtained" and "sincerely attempted to meet the disclosure requirements." Based on these facts, it is not clearly erroneous to conclude that Triplett's cursory review fails to rise to the level of fraudulent intent.

No. 25-40520

Overall, Black and Haltom fail to show that Triplett's purported misstatements were false or made with the necessary intent, and they do not show clear error by the district or bankruptcy courts.

## C. Section 727(a)(6)(A)

The final statutory exception at issue provides that a court need not grant discharge when "the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). "Showing that a debtor merely failed to comply with the terms of an order is not enough; . . . the debtor's lack of compliance with the order must be 'willful and intentional.'" *In re Wells*, 426 B.R. 579, 609 (Bankr. N.D. Tex. 2006) (quoting *In re Foster*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006)); *see also In re Jones*, 490 F.2d at 456–57 (affirming the bankruptcy court's decision not to deny a debtor a discharge when the debtor's failure to comply with an order was "not due to wil[l]ful, intentional disobedience or dereliction, but rather to inadvertence and mistake"). Indeed, "[a] debtor forfeits his discharge for refusing to obey a court order only in cases of willful disobedience, and not merely for inadvertence or mistake." *In re Meredith*, No. 3:04-ap-01110, 2005 WL 5468745, at *7 (Bankr. M.D. La. Dec. 29, 2005) (citing *In re Jones*, 490 F.2d at 456), *aff'd*, 231 F. App'x 321 (5th Cir. 2007) (unpublished).

Black and Haltom argue that Triplett disobeyed four orders: (1) the 2004 examination Order; (2) the Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727; (3) the Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination; and (4) the Order Granting in Part and Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions. Black and Haltom are wrong on all counts. It is unfortunate

that they had to seek court orders several times, but their contention that Triplett's alleged disobedience was willful or intentional is just unfounded.

First, the 2004 Order required Triplett to (1) submit to a 10-hour examination that could be split in two days; (2) obtain and produce the list documents the bankruptcy court identified; and (3) cooperate with all discovery requests. Triplett complied. Triplett appeared and submitted to a Rule 2004 examination for five hours in two days. And believing that it was "reasonable to search high and low" for "anything that [he may] have in [his] possession or anything that [he may] control over in [his] possession[] and provide it," he confirmed that, "[i]f [he] had it, [he] provided it." And though Triplett did not personally reach out to the financial institutions to ask for all the records, it may not be reasonable to pay a bank to produce documents at notable expense when Triplett was in bankruptcy. Further, Triplett and his attorney at least "tried to comply," and Triplett's counsel explained that she did not subpoena the banks because Black and Haltom's counsel stated that *they* would subpoena the records, given that they "did not trust [Triplett and Lindauer] to get the records" and "did not trust what [Triplett] would get and turn over to" them.

Second, the order granting Black and Haltom's request for another extension required Triplett to (1) appear for another Rule 2004 examination that "shall continue from day to day, until completed" and (2) produce the documents and information that Black and Haltom request and that the court previously identified. Triplett complied. Of course, Triplett stated he was only going to testify "[f]or five hours today and tomorrow" because "[t]hat's the judge's order," but he "didn't know" at the time that "there had been another hearing" and "an order that said [the deposition] was going to be unlimited." After learning this, Triplett appeared as required, and counsel was able to finish his examination of Triplett. As to the document production, Triplett stated that, "[i]f [he] had it, [he] provided it."

No. 25-40520

Third, Triplett did not violate the Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination, which instructed Triplett to "re-appear and continue to give testimony and be deposed for no longer than six (6) hours, on the record," and "for no longer than three (3) hours, on the record," if additional time is needed. Triplett appeared for another examination, and counsel was able to finish his Rule 2004 examination.

Finally, Triplett did not violate the Order Granting in Part and Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions. This order sanctioned Triplett in the amount of $500 and required him to pay this amount within 7 days. Triplett complied and paid that sanction.

Triplett did not disobey any of the four orders, and even if he had, any failure was only an honest mistake and "not due to wil[l]ful, intentional disobedience or dereliction, but rather to inadvertence and mistake." *In re Jones*, 490 F.2d at 456–57.

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.